## MARION MACHINE FOUNDRY & SUPPLY CO. v. PECK et al.　(No. 2571.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 24, 1926. Rehearing Denied April 14, 1926.)

1. **Tender** ⊜⟞12(2)—**Plaintiff was not required to accept offer of payment of notes signed by one defendant and abandon claim asserted on original debt.**

Where plaintiff, after suing defendants separately on individual notes given as consideration for release of title to machinery, amended by making both defendants parties to each suit and sought judgment against defendant P. for original debt in event it was determined that codefendant was not liable on notes signed by him, plaintiff was not required to accept offer of payment by defendant P. of notes signed by him and abandon claim asserted on original debt.

2. **Costs** ⊜⟞42(3) — **Interest** ⊜⟞50 — **Deposit with clerk of less than amount due on notes did not stop accrual of interest thereon and was ineffective to cast costs on adversary.**

Where principal, interest, and attorneys' fees, due on notes on February 5 was $1,303.03, and where defendant was not misled as to amount due, deposit with clerk on September 19 of $1,296.54 as amount due on first-named date was insufficient to stop accrual of interest on notes or on amount tendered or to cast costs on adversary.

3. **Novation** ⊜⟞1—**Substitution of notes for retention title contract held novation extinguishing original obligation.**

Where machinery was sold on retention title contract, and where individual notes of buy-

er and another were by agreement substituted for the original debt, it constituted a novation and extinguished the original obligation.

**4. Bills and notes ⟐⟐518(1)—Plaintiff's delay in furnishing release of retention title contract held insufficient under evidence to defeat defendant's promise to pay notes substituted therefor.**

Where seller of machinery under retention title contract complied with promise to release original debt in consideration of execution of notes to it by defendant and another, delay from June 1 to November 19 in furnishing release *held* insufficient in view of evidence of other consideration for agreement, to defeat defendant's promise to pay notes.

Appeal from District Court, Wilbarger County; J. A. Nabers, Special Judge.

Consolidated actions by the Marion Machine Foundry & Supply Company against A. P. Peck and another. From a judgment for plaintiff against the defendant named in an amount less than petitioned for, plaintiff appeals. Judgment reversed, reformed, and rendered.

See, also, 265 S. W. 195.

A. C. Scurlock, of Dallas, for appellant.

Berry, Stokes & Killough, of Vernon, for appellee Pigg.

O. T. Warlick, of Vernon, for appellee Peck.

JACKSON, J. The Marion Machine Foundry & Supply Company, plaintiff, on December 20, 1921, instituted suit No. 3099 in the district court of Wilbarger county, Tex., against A. P. Peck on two promissory notes each in the sum of $522.57, dated June 1, 1921, and due in 60 days and 4 months respectively after date, each bearing interest at the rate of 10 per cent. per annum, and providing for the usual 10 per cent. attorney's fees. Plaintiff on the same day filed in the same court suit No. 3100 against E. H. Pigg on two notes, each in the sum of $522.57, dated June 1, 1921, and due 60 days and 4 months, respectively, after date, and bearing interest at the rate of 8 per cent. per annum, and providing for the usual 10 per cent. attorney's fees.

Each of the defendants answered in his respective suit, and cause No. 3099 against A. P. Peck was tried and resulted in a hung jury.

Plaintiff on January 23, 1923, amended in each of the cases, making both of the defendants parties to each suit, and in addition to the causes of action pleaded in its original petitions, pleaded in the alternative that the defendants were liable on an open account for the sum of $24.45 for material purchased by them on their joint account. It also alleged as an alternative cause of action the original transaction by which it sold to E. H. Pigg certain equipment and machinery for which he agreed to pay $2,500, upon which a lien was retained to secure the payment of said sum, and that for the balance of said debt and the $24.45 it accepted the notes sued on, and, in the event A. P. Peck was not liable on the two notes on which he was sued, E. H. Pigg was responsible on the original debt. On motion of plaintiff the two cases were consolidated.

The defendant Pigg made a motion to set aside the order of the court consolidating the cases, alleging that no cause of action except upon the two notes declared upon in cause No. 3100 was asserted against him. The motion was granted, cause No. 3100 restored to its place on the docket, and, E. H. Pigg having deposited in court the amount the clerk under order of the court calculated would be due by him in said cause, it was dismissed, and from the order of dismissal plaintiff appealed to this court, and the judgment of the trial court was reversed and remanded, holding the cases should be consolidated. Marion Machine Foundry & Supply Co. v. Peck et al. (Tex. Civ. App.) 265 S. W. 195.

Plaintiff thereafter, by a fifth amended petition filed in the district court, declared first on the notes as separate and severable obligations against the defendants as alleged in the original petitions. In its alternative pleas, although of unnecessary length and inartistically drawn, they sufficiently disclose that on the 6th day of November, 1920, plaintiff sold to the defendant E. H. Pigg certain machinery and equipment for the sum of $2,500, giving a bill of sale therefor in which was retained a lien thereon to secure the payment of said amount in 60 days; that $500 thereof was paid January 1, 1921, and credited upon said indebtedness; that in the early part of 1921 plaintiff sold to the defendants additional material for the sum of $24.45, for which they were jointly liable; that by certain transactions and agreements, the details of which are unknown to plaintiff, the defendants became the owners of the machinery and equipment, and A. P. Peck assumed and promised to pay one-half of said debts, and the notes sued on were executed and delivered to plaintiff for said indebtedness, and plaintiff, in consideration of the giving of said notes, agreed to and did release its mortgage upon the equipment and machinery theretofore sold to E. H. Pigg.

Plaintiff charges that the defendants were partners on and after January 1, 1921, but specially denies the liability of A. P. Peck on the sale of the equipment and machinery to E. H. Pigg, as evidenced by the bill of sale dated November 6, 1920, and expressly disclaims any right of recovery against E. H. Pigg on any transaction dated prior to January 1, 1921.

The defendant A. P. Peck, in his fourth amended answer, pleaded general demurrer, special exceptions, general denial, and alleged that the notes he gave were for the debts of another, and that he executed them as an ac-

commodation to his codefendant and the plaintiff without any consideration to himself except the promise of plaintiff to immediately furnish a release of the chattel mortgage held by it against the equipment and machinery, and that his notes were delivered to plaintiff upon the condition that the release would be furnished at once and the mortgage satisfied of record; that plaintiff failed to furnish such release, and hence the consideration for his notes wholly failed. He also denied under oath that any partnership existed between him and his codefendant.

The defendant E. H. Pigg answered by general demurrer, special exceptions, general denial, and pleaded that on or about February 5, 1923, he offered to pay plaintiff's attorney of record the full amount of the notes upon which he was sued, principal, interest, attorney's fees, and costs; that he was ready, able, and willing to make such payment, and would have made a legal tender thereof, but for the fact that he was informed by plaintiff's attorney that he would not accept such payment because by retaining him as a party to the suit it would assist plaintiff in its suit against A. P. Peck; that he has at all times since such offer of payment been ready, willing, and able to pay the amount due by him, and did on or about September 19, 1923, deposit said amount with the clerk of the district court, all of which, except the court costs, is and has been since said date, with plaintiff's knowledge, subject to its order, and therefore, he is entitled to go hence with his costs; that prior to the execution of the notes sued on and before the debt for which the notes were given was incurred, this defendant and A. P. Peck were stockholders and interested in the Burk-Cameron Oil Company, a joint-stock association, owing an oil and gas lease in Wichita county, Tex., with some improvements and some production thereon; that he was in charge of said property for said association and purchased the equipment and machinery described in plaintiff's petition for its benefit, agreeing to pay therefor the sum of $2,500, all of which was mutually understood by him and his codefendant and the other members of said association, and, if the obligation and mortgage therefor was signed in his individual name, it was done by mutual mistake and should have been executed in the name of the Burk-Cameron Oil Company; that $500 of said indebtedness had been paid; that prior to the creating of the indebtedness to plaintiff a valid lien had been given against the property of the Burk-Cameron Oil Company to secure its indebtedness in the sum of $25,000; that said lien was foreclosed, the property sold, and acquired by him and A. P. Peck, subject to plaintiff's debt, and they were jointly liable therefor; that thereafter plaintiff agreed with him and his codefendant to accept the notes upon which he was sued, in payment of one-half of said indebtedness, in-

cluding the item of $24.45, and to accept the note of his codefendant, A. P. Peck, for one-half thereof in payment and discharge of the original debt, which constituted a novation of said original debt, and in pursuance of such agreement the notes involved in this controversy were executed, and he and his codefendant each became severally bound for one-half of the original indebtedness according to the terms and tenor of said notes.

The case was submitted on special issues, in answer to which the jury found, relative to the defendant E. H. Pigg, that on or about February 5, 1923, he offered to pay to the plaintiff the amount due on the two notes on which he was sued, including principal, interest, attorney's fees, and costs; that he was ready, willing, and able, and would have paid said amount if plaintiff's attorney had not indicated that the payment would not be accepted. These findings, while controverted, have sufficient support in the testimony.

The record discloses that on November 6, 1920, E. H. Pigg purchased the equipment and machinery from the plaintiff for the sum of $2,500, and received a bill of sale therefor which retained a lien against the machinery to secure the purchase money; that $500 was paid thereon shortly after the purchase, leaving a balance of $2,000; that, while this transaction was had in the name of E. H. Pigg, he was in charge of and acting for the Burk-Cameron Oil Company, a joint-stock association, owning an oil and gas lease in Wichita county, Tex., upon which this machinery was placed for the use and benefit of the company; that A. P. Peck and E. H. Pigg, together with the other trustees of said joint-stock association, had in May, 1920, executed a deed of trust lien against the properties of said company to secure to the Wichita State Bank & Trust Company a promissory note in the sum of $25,000; that default was made in the payment of said note, and the property sold in accordance with the provisions of the deed of trust, on January 4, 1921, for the indebtedness, and on the same day acquired by the defendants herein; that both of the defendants were stockholders and trustees in the Burk-Cameron Oil Company at the time of the purchase of the machinery from the plaintiff, and that the said machinery was still in use on the property at the time of the trial of this suit; that some time in the spring of 1921 plaintiff sold to the defendants on account additional material for the sum of $24.45; that on June 1, 1921, by agreement of the parties, the defendants each executed the two notes upon which he was sued, for one-half of the balance due for the machinery and additional material, and that plaintiff agreed to and did accept said notes in payment and satisfaction of the original indebtedness, and that these notes are the basis for plaintiff's main suit against each of the defendants.

On September 19, 1923, E. H. Pigg deposited

with the clerk of the court, to be paid out as the court directed, $1,296.54. On September 20, 1923, he deposited with the clerk $23.10 as costs. On December 5, 1924, he paid to the clerk $22, one-half of the transcript, which we assume was one-half of the costs accrued for the transcript on the former appeal of this case. On February 12, 1925, he deposited with the clerk, to be paid out as the court directed, $7.59.

In response to the special issues which the jury were directed to answer relative to the liability of A. P. Peck, the jury found that he executed and delivered the notes upon which he was sued for the consideration that the mortgage on the equipment and machinery should be released, but that the release of the mortgage was not the sole consideration for the execution and delivery of the notes by the defendant A. P. Peck, and that he did not deliver the notes on the sole condition that the plaintiff upon their receipt would execute and deliver a release of the chattel mortgage; that the plaintiff, through its agents, promised A. P. Peck that if he would sign and deliver the notes it would release the mortgage, and that but for such promise he would not have signed the notes.

On the 4th of February, 1925, A. P. Peck paid to the clerk in case No. 3099 $29 in payment of the open account for $24.45 with interest thereon.

On November 19, 1921, the plaintiff, by its attorney, mailed to E. H. Pigg the following instrument:

"The County Clerk, Wichita County, Wichita Falls, Texas—Dear Sir: On the 6th day of November, 1920 a bill of sale and chattel mortgage in one instrument was executed by the Marion Machine Foundry & Supply Company, by A. Honegger, manager of the Burkburnett branch, as the seller of the material described in such chattel mortgage, and by E. H. Pigg as the purchaser of such material, as mortgagor, Such instrument being recorded in the bill of sale records of said county in volume 3, page 390, which record is made a part hereof and referred to for all purposes.

"The indebtedness of $2,500.00 due the said Marion Machine Foundry & Supply Company having been paid in full by four certain promissory notes subsequently executed by E. H. Pigg and A. P. Peck, the said chattel mortgage is hereby released."

This instrument was executed by the company, per its attorney. On the same day said attorney mailed to E. H. Pigg the bill of sale and chattel mortgage, marked in red letters, "Canceled," and wrote on the instrument, in effect, that it constituted the only note and chattel mortgage given in the original transaction by Mr. Pigg to the plaintiff for the equipment and machinery.

Mr. Pigg admitted that he received the instrument addressed to the county clerk of Wichita county, Tex.

Mr. Peck testified that he did not receive a release at the time plaintiff received the notes

he and Mr. Pigg had given, and that the instrument addressed to the clerk of Wichita county is the only release that he ever received; that he received a number of letters from the attorney of plaintiff relative to the payment of the notes and the release of the mortgage, etc., none of which he answered. Three other releases were later executed by the plaintiff's authorized agent and furnished, but it is unnecessary, in our view of the case, to make further reference thereto.

On this verdict of the jury and the record, the court entered a judgment for the plaintiff against E. H. Pigg for the sum of $1,304.13, without interest, and against A. P. Peck for the sum of $29, and directed the clerk, when the judgment was receipted and satisfied, to pay said sums to the plaintiff, and that A. P. Peck pay all the costs in cause No. 3099 accruing before it was consolidated with 3100, and one-half of all costs expended in the consolidated case 3099 and 3100 after their consolidation, and that plaintiff pay one-half of all costs accrued since the consolidation of the cases.

On this judgment appellant, the plaintiff below, appealed, and both defendants are appellees.

[1] The record discloses that appellee E. H. Pigg made the offer of payment after plaintiff had amended, making both of the defendants parties to each of the suits, and on sufficient allegations sought a judgment against Pigg for the entire original debt, in the event it was determined that A. P. Peck was not liable on the notes signed by him for one-half of the indebtedness. Appellee Pigg's offer was limited to the amount of the two notes he had given June 1, 1921, with interest and attorney's fees thereon, and the costs in case No. 3100. This offer, if accepted by appellant as made, would have required an abandonment of the claim asserted by appellant on the original debt in its alternative plea, and, under the facts revealed by the record, it was not required to accept such offer, and thus determine, at its hazard, the liability of A. P. Peck on his notes. This conclusion is not affected by the insufficiency of the testimony to sustain the allegations of appellee Peck that the notes made by him were given for the debt of another, and were executed and delivered by him as accommodation paper. Appellant could not be required to determine before the trial that appellee A. P. Peck could not sustain his contention.

[2] The jury found that appellee Pigg made the offer on or about February 5, 1923, and, if it should be conceded that this finding makes the date of the offer sufficiently definite, the deposit by him on September 19, 1923, with the clerk, of $1,296.54 as the amount due February 5, 1923, was insufficient, as a calculation will show that the sum of principal, interest, and attorney's fees of the notes on said date was $1,303.93. That the amount deposited was insufficient is, in

effect, admitted by appellee Pigg, because on February 12, 1925, he deposited the additional sum of $7.59. The deposit in court of the $1,296.54 makes certain the amount of his offer or tender, and, as it was less than the amount due on February 5, 1923, it did not stop the accrual of interest on the notes nor on the amount tendered. He made this payment or tender into court at his peril, and the amount of the deficiency does not modify the rule. Hunt on Tender, par. 195, p. 196; 38 Cyc. 137; California State Life Ins. Co. v. Elliott (Tex. Civ. App.) 193 S. W. 1096; City of San Antonio v. Campbell (Tex. Civ. App.) 56 S. W. 130; Henry et al. v. Sansom et al. (Tex. Civ. App.) 36 S. W. 123. This was a liquidated claim, and there is nothing in the record which indicates that appellant had exclusive knowledge of the amount due or in any way misled said appellee as to such amount. Barreda v. Merchants' National Bank (Tex. Civ. App.) 206 S. W. 726. For additional authorities see Manhattan Life Ins. Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099; Hendricks v. Martin (Tex. Civ. App.) 267 S. W. 1047; Stuard v. Thompson (Tex. Civ. App.) 251 S. W. 277.

The judgment of the trial court decreeing appellant a recovery of $1,304.13 without interest against appellee E. H. Pigg is reversed and reformed and here rendered for the Marion Machine Foundry & Supply Company against E. H. Pigg for the principal of the two notes executed by him June 1, 1921, with interest and attorney's fees which had accrued thereon according to their face and tenor on February 4, 1925, the date of the judgment in the lower court, with interest on said judgment from said date, and for the costs accrued in cause No. 3100, and one-half the costs accrued in the consolidated case No. 3099 and 3100.

[3] The record makes it manifest that the individual notes of the appellees were given to plaintiff, and, by the agreement of all parties, were substituted for the original debt, and that the transaction of June 1, 1923, the date on which the notes were given, constituted a novation and extinguished the original obligation; and the disposition of the case by the trial court is conclusive that he so held. This holding, notwithstanding appellant's disclaiming any right of action against the appellee A. P. Peck on any transaction dated prior to January 1, 1921, is correct.

[4] The jury having found that the promise of appellant to release the original indebtedness and the lien by which it was secured was not the sole consideration for the notes executed and delivered to plaintiff by appellee Peck, and that said notes were not delivered on the sole condition that such release should be furnished, together with the uncontroverted fact that appellant did furnish a release of the original debt and lien and canceled the bill of sale, the evidence of which action was furnished, and the receipt of which appellee Peck acknowledged, is conclusive that the failure of consideration pleaded by appellee Peck is not sustained by the verdict of the jury and the testimony. Appellant having complied with its promise to furnish such release, its delay in doing so until November 19, 1921, in the absence of any resulting damage to said appellee by reason of such delay, and he makes no contention here that he suffered any damages on account thereof, is not sufficient to defeat his promise to pay as evidenced by his notes or to entitle him to any credit thereon.

The judgment of the trial court in decreeing appellant a recovery against appellee Peck in the sum of $29 is reversed and reformed and here rendered for the Marion Machine Foundry & Supply Company against A. P. Peck for the principal of the two notes executed by him June 1, 1921, with interest and attorney's fees accrued thereon, according to their face and tenor on February 4, 1925, the date of the judgment in the lower court, with interest on said judgment from said date, and for the costs accrued in cause No. 3099, and for one-half the costs accrued in the consolidated case No. 3099 and 3100.

For the errors discussed, the judgment of the trial court is reversed and reformed, and here rendered as above stated.